STATE v. K.B.
2022 OK CR 22
Case Number: JS-2022-348
Decided: 09/22/2022
THE STATE OF OKLAHOMA, Appellant v. K.B., Appellee
Cite as: 2022 OK CR 22, __ __

 

OPINION
LEWIS, JUDGE:
¶1 Appellee, K.B., is charged as a Youthful Offender with Manslaughter in the First Degree, in violation of (3), in Oklahoma County District Court Case No. CF-2021-5362. On January 6, 2022, the State filed a Motion for Imposition of an Adult Sentence. Eight days later, Appellee filed a Motion for Certification as a Juvenile or in the Alternative as a Youthful Offender. A hearing on the motions was conducted over the course of March 11, 18, and 30, 2022. After taking the matter under advisement, the Honorable Thomas Riesen, Special Judge, denied the State's request to certify Appellee as eligible for an adult sentence and granted Appellee's request to be treated as a Youthful Offender in an order filed on April 7, 2022. The order further bound Appellee over for trial as charged.
¶2 The State appeals the denial of its Motion for Imposition of an Adult Sentence, arguing the trial court abused its discretion because the State presented clear and convincing evidence that Appellee should be sentenced as an adult upon conviction. The State contends that the trial court improperly weighed the seven factors enumerated in 10A O.S.Supp.2018, § 2-5-208. Alternatively, the State argues that the trial court improperly considered factors outside of those enumerated in the statute.
¶3 Pursuant to Rule 11.2, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2022), this appeal was automatically assigned to this Court's accelerated docket and the issue was presented to this Court in oral argument on July 21, 2022. At the conclusion of oral argument, the parties were advised of the decision of this Court.
¶4 The District Court's order denying the State's request to certify Appellee to stand trial as an adult is AFFIRMED. Recognizing the need for expeditiousness in this matter given Appellee's age, the Court entered a Summary Order on August 10, 2022, directing the District Court to proceed on the disposition of Appellee's case without delay. The Summary Order filed on August 10, 2022, is hereby WITHDRAWN and substituted with the following Opinion.
¶5 We note first that, by operation of law, Appellee is presumed to be a Youthful Offender. See 10A O.S.Supp.2021, § 2-5-206(A)(1)(c). To rebut this presumption, the State must prove by clear and convincing evidence that either "there is good cause to believe that the accused person would not reasonably complete a plan of rehabilitation or that the public would not be adequately protected if the person were to be sentenced as a youthful offender." 10A O.S.Supp.2018 § 2-5-208(D); G.G. v. State, , ¶ 12, , 939; J.T.A. v. State, , ¶ 11, , 781. Only if the trial court makes at least one of these findings by clear and convincing evidence is it required to certify the accused person as eligible for the imposition of an adult sentence. 10A O.S.Supp.2018, § 2-5-208(D).
¶6 In making this determination, the trial court is directed to consider the following seven factors, giving greatest weight to the first three:
a. whether the offense was committed in an aggressive, violent, premeditated or willful manner,
b. whether the offense was against persons and, if personal injury resulted, the degree of injury,
c. the record and history of the accused person, including previous contacts with law enforcement agencies and juvenile or criminal courts, prior periods of probation and commitments to juvenile institutions,
d. the sophistication and maturity of the accused person and the capability of distinguishing right from wrong as determined by consideration of the psychological evaluation, home, environmental situation, emotional attitude and pattern of living of the accused person,
e. the prospects for adequate protection of the public if the accused person is processed through the youthful offender system or the juvenile system,
f. the reasonable likelihood of rehabilitation of the accused person if the accused person is found to have committed the alleged offense, by the use of procedures and facilities currently available to the juvenile court, and
g. whether the offense occurred while the accused person was escaping or on escape status from an institution for youthful offenders or delinquent children.
10A O.S.Supp.2018, § 2-5-208(C)(2).
¶7 The question before this Court is whether the trial court abused its discretion in denying the State's motion to certify Appellee as eligible for imposition of an adult sentence. See A.R.M. v. State, , ¶ 7, , 799; C.L.F. v. State, , ¶ 5, , 946.
An "abuse of discretion" has been defined by this Court as a clearly erroneous conclusion and judgment, one that is against the logic and effect of the facts presented in support of and against the application. . . . The trial court's decision must be determined by the evidence presented on the record, just as our review is limited to the record presented.
A.R.M., , ¶ 7, 279 P.3d at 799 (quoting W.C.P. v. State, , ¶ 9, , 100).
¶8 It is undisputed that Appellee fatally shot Devontae Smith in the late morning of November 24, 2021, in Oklahoma City. Appellee was seventeen years and two months of age at the time. The shooting occurred in a vacant lot adjoining a convenience store located near the intersection of N.E. 13th and Lottie. Video recordings of the incident captured by the convenience store's surveillance system were admitted into evidence at preliminary hearing.
¶9 Smith arrived at the vacant lot first in a white Toyota Camry driven by Ronald Holmes. A few minutes later, Appellee arrived in a white Ford Taurus driven by his girlfriend, D.L. Appellee and Smith, soon joined by Holmes, briefly interacted outside of the vehicles. Moments later, D.L. exited the Taurus, approached the group, and began shouting at Smith. She then walked back towards the driver's door of the Taurus. Smith followed her, and the two exchanged heated words while standing outside of the vehicle. Meanwhile, Appellee returned to the front passenger seat of the Taurus and sat inside with the door open.
¶10 Smith and D.L. continued arguing when abruptly, Smith grabbed D.L., shoved her towards the rear of the Taurus, and slammed her onto the trunk. At that, Appellee immediately jumped out of the car and pulled out a gun. He fired one shot at Smith, striking him in the chest. Smith and Holmes ran into the nearby convenience store, where Smith collapsed and ultimately died. D.L. and Appellee fled in the Taurus. Police located the couple four days later at Appellee's uncle's house in Guthrie. While sitting in the back of the police car, Appellee made the unprompted statement, "If you wouldn't have laid your hands [on] her, I wouldn't have had to do anything."
¶11 Dr. Barton Trentham, Chief Psychologist with the Oklahoma Office of Juvenile Affairs (OJA), participated in the preparation of Appellee's Psychological Evaluation, which was admitted into evidence at the certification hearing, and testified as a witness for the State at the hearing. He found Appellee to be of average intelligence with a level of sophistication and maturity congruent with similarly aged peers and the ability to distinguish right from wrong. Appellee met the diagnostic criteria for Post-Traumatic Stress Disorder. He also scored high for substance abuse difficulties and reported regular marijuana use starting at age thirteen, as well as less frequent use of other substances later in his teen years. Aside from a municipal citation for marijuana possession, Appellee had no prior contact with law enforcement or the justice system. Overall, testing indicated Appellee was at a low risk for future violent behavior.
¶12 Dr. Trentham testified that OJA has sufficient treatment programs to treat Appellee's needs. In his assessment, Appellee would require a minimum of six to seven months of intensive treatment, including time in the community to apply the tools and skills he learns. Dr. Trentham believed the public would be adequately protected should Appellee be processed through the youthful offender system, contingent on his amenability to treatment and willingness to make significant changes in his patterns of living. Dr. Trentham explained that whether Appellee would pose a risk to the public if he were released from OJA custody prior to completing treatment would depend on the "progress that he had made in treatment, and [his] commitment to follow up after release." Dr. Trentham found Appellee to have a "good prognosis" for amenability to treatment.
¶13 Jay Giezentanner, a Juvenile Justice Specialist with OJA, also interviewed Appellee and testified on behalf of the State at the certification hearing. Mr. Giezentanner testified that if Appellee were processed through the youthful offender system, OJA would recommend he be placed at a medium secure facility based on his treatment needs and the nature of the charged offense. He agreed with Dr. Trentham's assessment that the facility would have sufficient programs to treat Appellee.
¶14 Mr. Giezentanner testified that, assuming the court extends OJA's custody or supervision of Appellee until his nineteenth birthday, Appellee would have adequate time to complete the treatment program, followed by a minimum of six months of community supervision to ensure appropriate reintegration, if he were compliant. Mr. Giezentanner stressed that for Appellee to complete both treatment and community reintegration in the limited time available, his behavior must be "exemplary." In his opinion, Appellee's positive attitude and truthfulness, as well as his consistently good reports from the juvenile detention center, were indicators that Appellee would respond positively to treatment.
¶15 In a thorough and well-reasoned order, the trial court found the State had not shown by clear and convincing evidence that Appellee would not reasonably complete a plan of rehabilitation or that the public would not be adequately protected if he were sentenced as a Youthful Offender. The trial court separately reviewed each of the seven statutory factors it was required to consider and provided citations to the portions of the record it relied upon in reaching its conclusions.
¶16 Regarding the first two factors, the trial court found the offense was committed in an aggressive, violent, and willful manner and resulted in the death of another person. Even so, the trial court remarked that this is an "unusual manslaughter charge" in that "[a]lthough the offense was willful, [Appellee] was protecting a female from an assault." Weighing these factors along with Appellee's scant history with the justice system, his apparent amenability to rehabilitative efforts, and unrefuted testimony that the public would be adequately protected if Appellee were placed and treated in OJA custody, the trial court concluded the State failed to satisfy its burden to show adult certification was warranted in this case.
¶17 On appeal, the State asserts the trial court failed to give greatest weight to the first three statutory factors and improperly gave too much weight to the remaining factors in contravention of 10A O.S.Supp.2018, § 2-5-208(C)(2). Without identifying any specific finding of the trial court that was unsupported by the facts presented, the State emphasizes the seriousness of Appellee's actions in fatally shooting an unarmed individual. However, a finding that an offense was violent, or even deadly, does not alone end the trial court's inquiry. As we have previously recognized, the fact that a juvenile is accused of a serious act does not in and of itself answer the question of whether he or she is amenable to rehabilitation within the juvenile or youthful offender system. See W.C.P., , ¶ 7, 791 P.2d at 100. In this matter, Judge Riesen gave careful consideration to the actions of Appellee and the context in which they were committed. His order expressly states he gave the greatest weight to the first three factors. We find no merit to the State's argument that the trial court did not appropriately weigh the factors as required by statute.
¶18 The State further argues, contrary to its own witnesses' testimony, that Appellee will not have sufficient time to complete a rehabilitation program due to his age. This contention is simply not supported by the record. At the time of the hearing, the State's experts agreed Appellee would have adequate time to complete an appropriate treatment program and community reintegration within the statutory timeframe. To be sure, Mr. Giezentanner expressed concern that any setback in Appellee's treatment--for whatever reason--would extend his treatment time past his nineteenth birthday and, thus, beyond OJA's jurisdiction, if extended. Nevertheless, he concluded that even given the limited timeframe, "it's possible . . . to complete both those obligations" if Appellee were "exemplary" in his behavior.
¶19 While Appellee's age makes this a close call, on this record, the State's evidence failed to show that he could not reasonably complete a plan of rehabilitation within the time allowed by statute. In such cases, the Legislature has expressly declared its intent that "[n]o older youth should be deemed ineligible or denied consideration as a youthful offender who is otherwise lawfully eligible based upon the age of the youth being seventeen (17) years . . . ." 10A O.S.Supp.2018, § 2-5-207.
¶20 Having reviewed the appellate record in this case, we find Judge Riesen's denial of the State's motion to impose an adult sentence was not an abuse of discretion and was supported by the facts and law.
DECISION
¶21 The order of the District Court of Oklahoma County denying the State's Motion for Imposition of an Adult Sentence is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022), the MANDATE is ORDERED issued upon the filing of this decision.
AN APPEAL FROM THE DISTRICT COURT OF OKLAHOMA
COUNTY, THE HONORABLE THOMAS RIESEN, SPECIAL JUDGE

APPEARANCES AT TRIAL
TONY COLEMAN
101 PARK AVE., STE. 300
OKLAHOMA CITY, OK 73102
COUNSEL FOR DEFENDANT
KATHRYN BAUTISTA
ASST. DISTRICT ATTORNEY
320 ROBERT S. KERR, STE. 505
OKLAHOMA CITY, OK 73102
COUNSEL FOR THE STATE

APPEARANCES ON APPEAL
KATHRYN BAUTISTA
ASST. DISTRICT ATTORNEY
320 ROBERT S. KERR, STE. 505
OKLAHOMA CITY, OK 73102
COUNSEL FOR APPELLANT
TONY COLEMAN
101 PARK AVE., STE. 300
OKLAHOMA CITY, OK 73102
JAYE MENDROS
512 N.W. 12TH
OKLAHOMA CITY, OK 73103
COUNSEL FOR APPELLEE

OPINION BY: LEWIS, J.
ROWLAND, P.J.: Concur HUDSON, V.P.J.: Specially concur
LUMPKIN, J.: Concur MUSSEMAN, J.: Concur
FOOTNOTES
 Judge Riesen entered an amended order on April 8, 2022, to clarify that Appellant's request for certification as a juvenile was denied. Appellee did not appeal the denial of certification to the juvenile system to this Court.
 The order further advised that issuance of this opinion would follow.
 Because D.L. was a juvenile at the time of these events, this Court will refer to her by her initials.
 The record contains suggestions that Smith and D.L. had a prior dating relationship, but this was not established by the evidence.
 See 10A O.S.Supp.2021, § 2-5-209(B)(3).
 The Information filed by the State specifically alleges that Appellee "unnecessarily killed Smith . . . while resisting an attempt by [Smith] to commit a crime," namely, an assault and battery. See (3).

HUDSON, VICE PRESIDING JUDGE, SPECIALLY CONCUR:
¶1 I write specially to highlight the interplay between paragraphs C and D of 10A O.S.Supp.2018, § 2-5-208, which the circumstances of this case illustrate. This case clarifies that the factors listed in § 2-5-208(C) inform, but do not necessarily dictate, the final determination whether a youthful offender accused of a violent offense shall be sentenced as an adult. This analysis requires careful consideration and balancing by the trial judge of the § 2-5-208(C) factors in reaching the ultimate determination required by § 2-5-208(D)--whether "there is good cause to believe that the accused person would not reasonably complete a plan of rehabilitation or that the public would not be adequately protected if the person were to be sentenced as a youthful offender."
¶2 Even if the first three factors delineated in § 2-5-208(C) weigh heavily in the State's favor, the State still must show "by clear and convincing evidence that there is good cause" to believe either that the defendant, if sentenced as a youthful offender, would not reasonably complete a plan of rehabilitation or that the public would not be adequately protected. Period. Here, the State failed to show either condition required in § 2-5-208(D) for adult sentencing.
¶3 It is not enough to say that a youthful offender who is accused of a homicide must be sentenced as an adult because of the weight to be given to the first three factors in § 2-5-208(C). A qualitative assessment of each factor is required in the analysis. K.B.'s case is illustrative of this point. Despite the violent nature of his alleged crime, when making the ultimate determination required by § 2-5-208(D), the State's evidence was nonetheless insufficient to certify K.B. as eligible for imposition of an adult sentence.